IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

QUINTIN ELSTON, ET AL.,            )

    PLAINTIFFS,                    )

VS.                                )        CV88-H-2052-E

TALLADEGA COUNTY BOARD OF          )
EDUCATION, ET AL.,
                                   )
    DEFENDANTS.

ENTERED

SEP 1 9 1989

### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

This action was tried before the court, without the aid of a

jury, on August 21, 22 and 23, 1989.  The matter is now under

submission and the court herein sets forth its findings of fact

and conclusions of law.  Pursuant to the Pretrial Order, counsel

for the parties filed with the court on August 11, 1989 a

statement of agreed and disputed facts.  The court's findings of

fact and conclusions of law are basically addressed to the

proposed facts contained in that document in the order and under

the headings set forth therein.

### Stipulated Facts

In 54 separately numbered paragraphs the parties stipulated

a number of facts and each of those stipulated facts are accepted

by the court as facts for the purposes of this action.  The court

does, however, note that at least one of those stipulated facts

may not be correct but any error is relatively immaterial.  In

paragraph 13 of the stipulated facts, counsel stipulated that

defendants' plan for the students currently residing in Jonesview
and Talladega County Training School zones to attend Talladega
County Training School for grades 7 through 12.  Defendant Lance
Grissett has such plan and will recommend such to the Board of
Education but the Board of Education has not formally approved
such plan.

### Plaintiffs' proposed factual findings

In 44 separately numbered paragraphs counsel for plaintiffs
presented to the court proposed factual findings.  The court will
now set forth, using the same paragraph numbers, some of its
findings of fact and conclusions of law germane to each proposed
factual finding.  The failure to include the language or the
"facts" as proposed by counsel for plaintiffs could generally be
viewed as a determination by the court that the proposed language
or "facts" have not been established or are embraced in other
findings or conclusions found elsewhere in this document.

1.  Defendants plan to discontinue grades K-6 at Jonesview
(an historically white school) and at Talladega County Training
School (an historically black school) and to relocate those
grades at the site of the former Idalia School (which burned in
1986) in a new school building which will house grades K-6 from
the three school zones.

2.  Black parents have contributed significant time and
financial resources to support and enhance the Talladega County
Training School.  Despite these contributions and the
expenditures by the Board of Education for maintenance and

2

improvements over the years, the Training School, like other
schools in the system, has generally deteriorated.  A renovation
and rebuilding program has been underway for several years and
Talladega County Training School is slated for substantial
renovation in the immediate future.  Several historically white
schools are not as far along as Talladega County Training School
in the renovation plans.

3.  Assignment of all students from the new school to the
Talladega County Training School for grades 7-12 would add about
135 white students to the Training School which would
significantly improve integration at the Training School.  About
55 of those students would come from Jonesview Elementary School
zone and approximately 80 would be supplied by Idalia Elementary
School zone.  While it seems clear the Jonesview students will be
so assigned, the Board has not made a decision as to where the
Idalia students will be assigned.

4.  Although the Board has never formally voted to close the
elementary section of the Talladega County Training School or
voted to close Jonesview Elementary school, when the Board
approved the construction of the new 500 pupil school to be known
as Stemley Bridge Road Elementary, implicit in that decision was
the closure of Jonesview and the elimination of elementary grades
at the Talladega County Training School.

5.  The Talladega County Board of Education has not
finalized where students attending the new school who currently
live in the Idalia School zone will go for grades 7-12, but the

3

Superintendent presently intends to recommend that many of them attend Drew Middle School for grades 7-8 and Lincoln High School for grades 9-12 which are the schools those students have historically been zoned to attend.

6. Defendants plan to renovate the Talladega County Training School for use as a 7-12 facility. As of June 1988, the estimated expenditure on renovation for the Training School was $500,000.

7. The construction of a new school at the site adjacent to the Idalia School, originally estimated to cost about $1,200,000, later estimated to cost $1,800,000, is now anticipated by defendants to cost almost $2,600,000.

8. The plan to renovate all buildings at the Training School for use in the operation of a grades 7-12 school would cost essentially the same whether the new elementary school is located there or elsewhere. The cost of construction of a new school building containing about 53,000 gross square feet for use as a K-6 grade school for about 550 students would be approximately the same whether constructed at the Idalia or at the Talladega County Training School site.

9. In 1988 the Board relocated the Phyllis Wheatley Middle School, which historically was a black school, to a new facility about a mile from its former site. Although its name was changed to Childersburg Middle School, its attendance zones, faculty and bus routes did not change. The composition of the student body remained the same.

4

10.   Some black parents, including Mr. Charles Woods (a local leader), objected to moving the Wheatley School to the new location and changing the name.  Mr. Woods believed the plan was racially motivated and part of a pattern of closing historically black schools.  He asked to be allowed to meet with the Talladega County Board of Education to express his opposition to the moving of Phyllis Wheatley but was not successful in arranging such a meeting.

11.   Under the terms of a resolution adopted November 22, 1983 by the Talladega County Board of Education and filed in this court in *Lee v. Macon County* prior to the March 13, 1985 "unitary" order, the Board committed itself to maintaining a unitary, nondiscriminatory school system.  There is no evidence that it has violated this commitment since March 13, 1985; and the court is satisfied that the Board's actions and decisions challenged in this suit do not violate that commitment.

12.   Prior to the March 13, 1985 order (a) determining that the Talladega County School System had attained unitary status and (b) dismissing the Talladega County Board of Education from the *Lee v. Macon County* litigation, the Board decided to close Hannah Mallory Elementary School, a 100% black school with grades K-6, at the end of the school year 1984-85.  A formal "closure" resoluton was adopted in the summer of 1985.

13.   When the Hannah Mallory School was closed after the 1984-85 school year, the Hannah Mallory attendance zone was divided among three attendance zones primarily on a proximity

5

basis.  Prior to the March 13, 1985 unitary order, defendants had
submitted to the Department of Justice the proposed closing of
Hannah Mallory and the anticipated distribution of its students
as actually distributed.  The plan envisioned assigning the 132
black students at Hannah Mallory as follows: 26 - Childersburg;
26 - Jonesview; 80 - Talladega County Training School.
Childersburg zone, Jonesview zone and Talladega County Training
zone all received the Hannah Mallory students, all of whom were
black.

14.  As a result of the zoning changes made in 1985 when
Hannah Mallory was closed, about 132 black students were
reassigned to the three zones earlier mentioned.  The following
school year, as a result of a combination of those assignments
and natural or normal enrollment fluctuations, black student
enrollments in grades K-6 in the three receiving school districts
increased as follows:  Jonesview went from 85 to 116;
Childersburg went from 134 to 147; and Talladega County Training
went from 134 to 236.

15.  This increase crowded the facilities at the Training
School and required the use of some portable classrooms.
Disbursement of the Hannah Mallory students among the three
receiving zones promoted integration in the Childersburg zone,
adversely affected integration in the Jonesview zone and had no
significant effect on integration at Talladega County Training
School.  The increased concentration of black students at the
Training School makes it more difficult to desegregate the

6

Training School, but the planned new school will dramatically improve the black-white ratio for the students who currently attend grades K-6 at the Training School. Those students currently are in an environment which is 99% black and will be in an environment that is 70-75% black.

16. This proposed fact has not been established.

17. This proposed fact has not been established.

18. The additional K-6 zone that was created for the Training School following the closure of Hannah Mallory is not contiguous with the original Training School K-6 zone and in this respect it is unique; but the K-6 zone is contiguous to a then existing Training School 7-12 zone.

19. There is property adjacent to the Talladega County Training School which if acquired by gift, purchase or condemnation, would have been suitable for expansion. This includes property owned by members of the Dumas family and the Lawson family. A minimum of 15 acres were needed for the new school and the Board ultimately was able to acquire for the new school 48 acres at the Idalia site in October of 1987.

20. Inquiries in the spring of 1988 made to a representative of the Dumas property owners by the principal of the Talladega County Training School, Mr. John Stamps, caused Mr. Stamps to conclude and to report that the Dumas owners after resolving a boundary line problem with the Board, might be receptive to offers to purchase or swap land and might even donate some property to the school. The Dumas representative

7

seemed particularly concerned that a portion of their land might
be across the road and was being used by the school as school
land.  All of this took place **after** the Board of Education had
acquired a 48 acre site at Idalia and made the decision to build
the new school at the Idalia site and also after including funds
for construction of the new school in the bond issue authorized
December 1, 1987.

21.  In 1988, Mr. Stamps inquired of a representative of the
Lawson family whether it would consider the sale of about 6 acres
of property adjacent to the school.  This was adjacent to the
football field and was not a suitable site for a new school
facility.  The representative reported that if absolutely
necessary, the family might consider a sale.  This conversation
also took place after the Board had acquired the 48-acre site at
Idalia.

22.  There is no evidence that the Board sought opinions
from parents, black or white, of students to be affected by the
decision to create a single large elementary school to serve the
Jonesview, Talladega County Training and Idalia zones.  Board
meetings, however, have been open to all parents and interested
persons.  The Board sets aside a portion of each meeting to
receive comments, complaints, etc., from members of the public in
attendance.

23.  On January 21, 1988, Mr. Augustus Elston wrote
Superintendent Grissett noting that concerned parents with
children in attendance at Talladega County Training High School

8

were requesting permission to be heard at the next meeting of the Talladega County Board of Education. The letter stated that "[t]here are many items of grave concern that we need to discuss." This letter was also sent to the other Board members. The next day the Superintendent of the Board wrote to Elston, referring him to Principal Stamps and saying he (the Superintendent) would be glad to meet with Mr. Elson, if necessary. This letter was followed up by a telephone call from Principal Stamps to Mr. Elston.

24. On January 27, 1988, Mr. Elston again wrote to Dr. Grissett requesting that concerned parents of Talladega County Training High School be allowed the opportunity to be heard at the next Board meeting. The letter requested that if the parents were not following the proper channels to get on the agenda, that they be informed of the correct procedure. Copies were sent to the other Board members. No response to this letter was made by any Board member or Dr. Grissett.

25. On February 9, 1989, Mr. Elston wrote to Dr. Morris, Chairman of the Talladega County Board of Education, complaining about an atmosphere of racism and racially prejudiced occurrences, and expressed concern that the Training School had been marked for closure and been excluded from recent planning for facility improvements. Four days later the Chairman of the Board of Education responded, specifically referring to the Talladega City Training School concerns and welcoming them to a Board meeting to voice any concern. Mr. Elston attended the next

9

Board meeting but when the time set aside to receive public comments arrived, Mr. Elston did not speak up. Mr. Elston explains this silence by his belief that it was too late in the meeting for the Board properly to consider his concerns.

26. This proposed fact has not been established.

27. On June 23, 1988, the Board, through its counsel, informed counsel for some of the plaintiffs in writing that the new school would accommodate students currently enrolled in the Idalia School and the "surrounding area" and that the attendance zone for the new school "could" include students from Lincoln Elementary and the Training School. The Board, through its counsel, reported that it had no plans to change the use of the Jonesview Elementary School. No evidence was presented to the court which sheds light on this incorrect information in such correspondence.

28. With respect to the May 1988 request for state facilities surveys referenced in paragraph 35 of the Stipulated Facts, the Board, through its counsel, informed counsel for plaintiffs that when the Board received the facilities reports, a copy would be made available.

29. This proposed fact has not been established.

30. Significant numbers of white students who reside within the Talladega County Training School zone attend public schools in the Talladega City School system. This has occurred for many years and occurred long before the March 13, 1985 "unitary" order.

31. Dr. Grissett has not contacted school officials of the Talladega City School system in an effort to stop it from accepting into its system children who reside in the Talladega County Training School zone.

32. This proposed fact has not been established.

33. On April 19, 1979, the Justice Department notified counsel who represented both the Talladega City Board of Education and the Talladega County Board of Education that the Talladega City School system was governed by a provision in its school desegregation order that it should not consent to transfers where the cumulative effect would reduce desegregation in either district.

34. As required by state law, defendants have transferred school records of students leaving the Talladega County School system after they have enrolled in the Talladega City School system.

35. The Talladega County School system does not have a written policy regarding verification of residences of students seeking to enroll in County schools. It does seek to verify the residences of students in its system transferring to another school in its system.

36. Defendants are aware of zone-jumping by white and black students alike. Many of the white students are likely avoiding historically black Talladega County Training School. One of the objectives in building the new Stemley Bridge Road Elementary School was to discourage such zone-jumping; another of such

11

objectives was to foster and promote integration of children in the three affected zones.

37.   This proposed fact has not been established.

38.   If there is any significant zone-jumping within the County system by students avoiding the Training School, no evidence sufficient to reach that conclusion has been presented.

39.   The Board of Education provides transportation to students who attend school in the County system and it is possible for some students to use that transportation to attend an incorrect school.

40.   The Talladega County Board of Education may have received an inquiry in 1984 by the Justice Department regarding possible zone-jumping by students avoiding historically black Hannah Mallory School and the Talladega County Training School. The extent of any such zone-jumping in 1984 is not known.

41.   About ten years ago, when a portion of the Talladega County school district was sought to be annexed by a school system in another county, the Board took steps in *Lee v. Macon County* to stop the annexation. The area sought to be annexed contained mostly white students and both the school systems involved were under court ordered integration. The Board has taken few, if any, steps to stop the loss of white students to the separate school systems operated by the City of Talladega or the City of Sylacauga from predominately and historically black Talladega County Training School.

42.   The Talladega County Board's policy authorized

12

majority-to-minority transfers.

43.   The Talladega County Board has not advertized the
availability of the majority-to-minority transfer option.

44.   One of the members of the Talladega County Board was
recently asked and did not know what a majority-to-minority
transfer is.

### Facts to be offered by proffer

The document filed August 11, 1989 contain 10 paragraphs
setting forth "facts" which counsel contemplated would be offered
to the court by a proffer.  No proffer was made during the trial
and that section of the August 11, 1989 document will not be
addressed by the court.

### Defendants' proposed factual findings

In 24 separately numbered paragraphs counsel for defendants
presented to the court proposed factual findings.  The court will
now set forth, using the same paragraph numbers, some of its
findings of fact and conclusions of law germane to each proposed
factual finding.  The failure to include the language or the
"facts" as proposed by counsel for defendants could generally be
viewed as a determination by the court that the proposed language
or "facts" have not been established or are embraced in other
findings or conclusions found elsewhere in this document.

1.   Plaintiffs have failed to establish their entitlement to
prevail or obtain relief under any of the claims they have made
in their complaint.

2.   There has been no significant or material change in the

13

percentage of white and non-white students attending schools
operated by the Talladega County Board of Education during the
past 15 years.

3.   The Talladega County schools were under the supervision
of the United States District Court from 1970 until March 13,
1985.

4.   The Talladega County Board of Education was dismissed
from the *Lee v. Macon County* litigation on March 13, 1985 by
consent, the court expressly concluding that the system had
achieved a unitary status.

5.   The closing of Jonesview School, the elimination of
grades K-6 at Talladega County Training School, and the
consolidation of all those students with students in the Idalia
zone at a new facility under construction adjacent to and on the
north side of the old Idalia site is consistent with the
operation of a unitary, racially non-discriminatory public school
system.   The anticipated zones for the students when they reach
grades 7-12 are also consistent with such an operation.

6.   The decision to build the new Stemley Bridge Road
Elementary School now under construction has not been shown to
have been racially motivated.   Its construction will provide
better educational opportunities for all of the children it
serves.   Construction of the new Stemley Bridge School will
enhance desegregation of grades K-6 at the present Talladega
County Training School, since it will take students who are now
in an environment about 99% black and change that ratio to about

14

70-75% black.

7.  The Board was reasonable in assuming that the Lawson
family which owns much of the land around the present site of the
Talladega County Training School likely would not sell land to
the Board.  At one point in the past, the patriarch of the family
is reputed to have told a former Board member that he would
"freeze in hell" before he would sell another piece of land to
the County.  Regardless of whether land might have been available
at the Talladega County Training School site, the Board made a
sound decision from an educational viewpoint not to locate the
new elementary school at the site of a middle school/high school.
This decision did not have a racially discriminatory animus and
did not have a disparate impact on blacks.

8.  The plaintiffs have not shown that the location of the
new Stemley Bridge Road School was racially motivated or effected
a disparate impact on blacks.

9.  Talladega County Training School is not scheduled for
closing, but is scheduled for substantial renovation and
upgrading so that it may serve as an expanded grades 7-12 school.
The capital outlay for the improvements will equal or exceed
$500,000.

10.  The Talladega Board of Education neither "allows" nor
"condones" out-of-zone attendance, or "zone-jumping" by a child
residing within its system but attending a public school outside
its system.  The Board has a significant financial interest in
discouraging such zone-jumping.  The Board also has a general

15

policy against a child zoned for one of its schools attending one
of the Board's schools out of his/her zone, but it has two
reasonable exceptions to this policy, viz, children of employees
of the Board may attend in the zone of a parent's employment and
children in need of special education may attend out-of-zone.  No
evidence even suggests that these exceptions are abused or
applied along racial lines, and it is clear the Board takes steps
calculated to assure that a child in its system attends the
proper school.  Talladega County School personnel have been aware
for quite some time that students of both races, but primarily
white students, who are zoned for Talladega County schools such
as Talladega County Training School are attending schools in the
Talladega City system and the Sylacauga City system.  Talladega
County school personnel are, as a practical matter, unable to
prevent this, since the enrollment and attendance of a public
school student is verified and determined by the gaining school
system (i.e., the city school system) and not by the losing
school system (in this case, Talladega County).  Talladega County
loses approximately $2,000 to $3,000 (depending upon the year) of
state education money per child per year for every "county"
student who attends a "city" system school.

          11.  Talladega County school personnel have previously
attempted to bring the problem discussed in paragraph 10 above to
the attention of the Federal Bureau of Investigation and the
United States Justice Department, but nothing has happened.

          12.  Only one historically black school (Hannah Mallory) has

16

been closed since 1970.  One historically white school
(Eastoboga) has also been closed during that period and another
historically white school (Jonesview) is currently in the process
of being closed.

13.  At the end of the 1987-88 school year, the Phyllis
Wheatley School, with the support of some members of the local
black community and over the objections of other members of the
local black community, was relocated to a new site about one mile
away.  The relocation of Phyllis Wheatley School did not change
the bus route, faculty, or student composition in any way.  The
name of the school was changed to Childersburg Middle School.

14.  In 1985 Hannah Mallory was the only remaining one-race
school in Talladega County.  It had been allowed to remain that
way during the entire time the school system was operating under
its *Lee v. Macon County* integration order primarily because of
the school's geographical location and the difficulty of
integrating it.

15.  The trend in modern public education is to consolidate
smaller "neighborhood" schools into larger ones with more diverse
student bodies and better facilities.  The new Stemley Bridge
Road School is in line with this trend, and it will make modern,
up-to-date facilities available to a large number of children in
grades K-6.  Its student body will be 70-75% black.

16.  There were two principal logistical problems with
locating the new larger elementary school at the site of
Talladega County Training School: (1) adequate land consisting of

17

a minimum of 15 acres was not readily available, and (2) the
Board needed the existing space at Talladega County Training
School embracing about 55,000 square feet for its planned upgrade
of that school and the enhanced grades 7-12 program it now has
planned.  The Board also had a strong desire not to locate the
large, consolidated elementary school at the site of a middle
school or a high school.

17.  The new Talladega County Training School building
program will include an up-to-date library, a media center
embracing a computer lab, and the addition of adequate science
laboratory space.  It will also include greatly expanded home
economics and industrial arts programs and facilities.  The
remodeling program also includes substantial physical
improvements, such as re-wiring, re-lighting, replacement of all
windows and doors, etc.

18.  By expanding and upgrading the facilities at Talladega
County Training School to enhance the education offered to grades
7-12 there, the Board hopes to be able to improve its course
offerings and attract and retain more white students to improve
racial balance at Talladega County Training School.  Regardless
of how effective this upgrade is in attracting more students to
that school who are now going to private schools or to adjoining
public systems, the planned renovation at Talladega County
Training School will unquestionably improve the quality of
education for students now attending there.

19.  The Talladega County Board of Education has moved

18

forward to improve the quality of education offered to all of its
students since March 13, 1985. In so doing there is no evidence
which can support a conclusion that race impermissibly was
considered in the decision-making process. There was no
discriminatory animus behind the plans and decisions challenged
in this case and it is clear that the challenged plans and
decisions have had no disparate impact on blacks.

20. It is clear to the court that over the years the Board
has delayed providing to the public, black and white alike,
information with regard to developments under consideration by
the Board, but there is no evidence that this has been done in a
racially discriminatory manner or with a racial animus. The
Board has not refused to receive comments or input from
plaintiffs at Board meetings or otherwise.

21. Mr. Elston wrote a total of three or four letters to
Talladega County school personnel, but all of those letters were
vague and he never made any follow up about what his "concerns"
were. In all but one instance the Board properly responded to
such letters. The court is particularly impressed with the
restrained response (Plaintiffs' Exhibit 4) to one of such
letters (Plaintiffs' Exhibit 5). Neither Mr. Elston nor any
other plaintiff who attended a Board meeting asked to speak to
the Board meeting about any of the "concerns" which they have
raised in the complaint.

22. The extent of the "zone-jumping" in which Talladega
County students are attending Talladega City or Sylacauga City

19

schools is not known, but it involves a significant number of
students, most of which are white but some of which are black.
Any such jumping does not appear to have changed significantly
over the years the racial composition of the students in the
Talladega County system or the Talladega City system.  Talladega
County system enrollment has remained about constant at 43% black
and Talladega City system enrollment has moved in recent years
from 40% black to 43% black notwithstanding the City's receipt of
students who reside outside the City.  Many of the students who
are or have been attending Sylacauga City Schools have done so
under "temporary guardianship" or similar court orders which
could well have been devices to permit their attendance at
Sylacauga City Schools.  There is no evidence that the orders are
fake and it seems that each such order was signed by a state
court judge with appropriate jurisdiction.  With regard to each
of these "receiving" systems, the Talladega County Board has few,
if any avenues available to it to stop this drain from its system
other than to discourage it by improvements to its system, such
as the improvements out of which this suit arose.  Certainly it
is clear that the Board would like to stop the zone-jumping.  The
Board is in no way intending to discriminate against plaintiffs
on the basis of race or to deny plaintiffs equal protection by
not being more "creative" in finding a way to prevent such zone-
jumping.

     23.  The Talladega County School System has not "notified
parents of children going out of zone" to another public school

                              20

system that their actions are improper. Defendants' view that it has no legal right or duty to do so is a sincere view with a reasonable basis to support it. Transferring school records, in accordance with state law requirements, of students leaving the County system for the City system does not make the defendants accountable for the conduct of the parents and the receiving school officials. Any "zone-jumping" among or between zones in the County school system is very limited, not authorized by the defendants, includes black as well as white students, and is largely corrected through the Board's policy of requiring the receiving principal to investigate transfers within the County's system.

24. One of the purposes, and hopefully one of the results of the upgrading and enhancement of Talladega County Training School grades 7-12 is to stop the loss of white students by providing attractive physical facilities and curriculum changes at Talladega County Training School.

Summary

In this case plaintiffs have endeavored to establish that several decisions and practices of defendants violate or violated (a) the Equal Protection Clause of the Fourteenth Amendment, (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., and (c) regulations promulgated to effectuate Title VI, 34 C.F.R. §100 et seq., and particularly 34 C.F.R. § 100.3. They have failed in this endeavor. With regard to all such claims, plaintiffs have failed to establish by a preponderance of the

21

evidence that any of the challenged decisions and practices were tainted by a racially discriminatory animus. A discriminatory intent being a prerequisite to recovery under the constitutional claim and the statutory claim, defendants are entitled to a judgment in their favor on these claims. Also, to the extent that plaintiffs sought to prevail on disparate treatment theories under their claims predicated on regulations to effectuate Title VI, defendants are entitled to a judgment in their favor. With regard to the claims based on disparate impact theories under the regulations to effectuate Title VI, plaintiffs have failed to establish by a preponderance of the evidence that any of the challenged decisions and practices violated the regulations or otherwise had a disparate impact on blacks. Thus plaintiffs have not established even a prima facie case under the regulations. Even though defendants had no burden of proof, they have articulated and established by clear and convincing evidence substantial, legitimate, non-discriminatory reasons for the decisions and practices in question. Since the court has earlier held that the decisions and practices of defendants did not result in a disparate impact on plaintiffs, it goes without saying that plaintiffs also failed to establish an alternative to the challenged decisions and practices which alternative would have resulted in less of a disparate impact.

A separate final judgment in favor of defendants will be entered.

DONE this ___19th___ day of September, 1989.

James W. Harwood
UNITED STATES DISTRICT JUDGE